Roderick Depaul **MOORE**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 01–94–00437–CR, 01–94–00438–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 21, 1995.

Allen C. Isbell, Houston, for Appellant.

John B. Holem, Carol M. Cameron, Gerald Graber, Houston, for Appellees.

Before OLIVER–PARROTT, C.J., and ANDELL and HEDGES, JJ.

## OPINION

HEDGES, Justice.

In this appeal, we are asked to decide whether a complaint about unobjected to comments by the trial judge on the weight of the evidence is fundamental error that may

be raised for the first time on appeal. We hold that it is not and affirm the conviction.

A jury found appellant, Roderick DePaul Moore, guilty of possession of a controlled substance and aggravated assault of a police officer.[1] After finding two enhancement paragraphs to be true, the trial court assessed punishment at 25–years confinement for each conviction with the sentences to run concurrently. In two virtually identical points of error, appellant contends that he was denied a fair trial when the trial court, sua sponte, cross-examined appellant's primary witness in an adversarial manner.

### Facts

At trial, the primary witnesses for the State were the two arresting officers. They testified that they saw appellant drop a crack pipe.[2] They further testified that after having briefly struggled with appellant in order to subdue him and place him under arrest,[3] one of them immediately retrieved the crack pipe from where they had seen appellant drop it.

In order to rebut the testimony of the officers, the defense called appellant's mother, Ms. Thompson, who had come upon the scene as appellant was being taken into custody. She testified that after the arresting officers placed appellant under arrest, they were joined by several other officers who had been called to the scene as backup. She claims that the arresting officers told the other officers that they had seen appellant drop "something." She further testified that all of the officers searched the area for approximately 15 minutes before one of the officers, who had arrived on the scene after appellant was in custody, discovered a piece of glass tubing and asked the arresting officers if it was what they were looking for.

### Comments by the Court

■ During the State's cross-examination of Ms. Thompson, the trial court questioned the witness. The relevant portion of Ms. Thompson's testimony and the interjection by the trial court are as follows:

Q: [THE STATE]: And just so it's clear to the jury, you don't know what happened, what your son did or what the officers did at the corner or at the intersection until you came outside the house, correct?

A: Right.

Q: And if your son was somewhere else besides the front yard, even in the intersection or somewhere else before he got to the yard, you weren't there to see any of that, correct?

A: No, I was not.

Q: And when you testify that you saw the officer searching for something, you're not testifying and you're not in a position to say that the officers had not found anything already, are you?

A: I can testify.

Q: I—

A: I can testify that they did not find what they identified as a crack pipe.

THE COURT: How on earth would you know that?

A: I saw him pick it up.

THE COURT: Now, are you saying there's only one crack pipe in Harris County, Texas?

A: No, I'm not.

THE COURT: Do you know of your own knowledge that there was no other crack pipe in this county prior to the time they found that one?

A: No, I'm not saying that.

THE COURT: If you're saying that there's only one found, and you saw it, you don't know—

---

1. TEX. HEALTH & SAFETY CODE § 481.115 (Vernon 1994); TEX.PENAL CODE ANN. § 22.02(b)(2) (Vernon 1994).

2. Cocaine residue found inside a crack pipe was the basis for the charge of possession of a controlled substance charge.

3. According to the testimony of the officers, appellant assaulted (bit and struck) one of the officers during the struggle to subdue appellant.

A: The one that was found on that scene, sir, that's what I meant.

THE COURT: But you don't know what happened prior to the time that you went outside.

A: No, I do not.

THE COURT: Unless you're clairvoyant.

A: No, I don't.

THE COURT: Good enough.

Had appellant objected to these remarks, the trial court should have sustained his objection. The Code of Criminal Procedure states:

> In ruling on the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

Tex.Code Crim.P.Ann. art. 38.05 (Vernon 1979).

### Standard of Review

■ The problem appellant faces is that he did not object to the judge's remarks. As a general rule, in order to preserve a complaint for review on appeal, a party must have made a timely objection to the trial court and obtained a ruling on the objection. Tex.R.App.P. 52(a); *see Munoz v. State*, 485 S.W.2d 782, 784 (Tex.Crim.App.1972). More specifically, a defendant must object to the trial court's comment at trial in order to preserve the error for appellate review. *Sharp v. State*, 707 S.W.2d 611, 619 (Tex. Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Martinez v. State*, 822 S.W.2d 276, 282 (Tex. App.—Corpus Christi 1991, no pet.).

### Fundamental Error Analysis

In both points of error, appellant argues that the judge's remarks amounted to fundamental error requiring reversal despite his failure to object. He contends that the trial judge took an adversarial position in his questioning of the defense witness and wrongfully influenced the jury towards disbelieving her testimony in favor of the testimony of the State's witnesses. The prejudice was magnified when the prosecutor, in his closing argument, suggested that the crack pipe Ms. Thompson saw the officer find may have been a different crack pipe—one discovered on the scene, but unconnected to the case at trial. This suggestion was the gist of the judge's remarks.

Both this Court and the Court of Criminal Appeals have consistently found that the failure to object to the trial court's comments precludes subsequent challenges on appeal. However, we have also acknowledged that an exception to the general rule exists in cases in which the trial court's comments and conduct amount to fundamental error. "Where no objection is made, remarks and conduct of the court may not be subsequently challenged *unless they are fundamentally erroneous.*" *Brewer v. State*, 572 S.W.2d 719, 721 (Tex.Crim.App. [Panel Op.] 1978) (emphasis added). "The defendant's counsel failed to object to the trial court's comments. *In the absence of fundamental error*, the defendant has waived these points on appeal." *Cade v. State*, 795 S.W.2d 43, 45 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd) (emphasis added).

■ Fundamental error is error that is so egregious and creates such harm that the defendant has not had a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *McIntosh v. State*, 855 S.W.2d 753, 760 (Tex.App.—Dallas 1993, pet. ref'd). Egregious harm "is presented when the reviewing court finds that the case for conviction or punishment was actually made clearly and significantly more persuasive by the error." *Skidmore v. State*, 838 S.W.2d 748, 755 (Tex.App.—Texarkana 1992, pet. ref'd) (citing *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App.1991)).

Appellant does not cite specific authority for the proposition that the comments made

by the judge were so egregious that the error was fundamental. Instead, he argues that rule 52(a) should not apply in this case. He contends that the right to a fair trial in which the trial judge does not intrude as an advocate is so basic in our adversarial system that it enjoys special protection.

The Court of Criminal Appeals discussed the nature of fundamental error in a recent case:

> All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong. Many constitutional rights fall into this category. When we say "that even constitutional guarantees can be waived by failure to object properly at trial," we mean that some, not all, constitutional rights may be forfeited. On the other hand, certain, relatively few, rights must be protected by the system's impartial representatives unless expressly waived by the party to whom they belong. Determining which category a right occupies will usually settle the question of procedural default in the context of the particular case.

*Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim.App.1993) (citation omitted).

■ The court reasoned that our criminal adjudicatory system contains three distinct types of rules: (1) absolute requirements and prohibitions; (2) rights of litigants that must be implemented by the system unless expressly waived; and (3) rights of litigants that are to be implemented upon request. *Marin*, 851 S.W.2d at 279. Only when this third category of rules is implicated may the defendant forfeit his right by the failure to exercise it. *Wright v. State*, 873 S.W.2d 77, 82 (Tex.App.—Dallas 1994, pet. ref'd). Our disposition of appellant's points of error requires us to categorize the right to a trial free of a judge's comment on the weight of the evidence.

■ The first category set out in *Marin* includes requirements that are essentially independent of the litigant's wishes. These include the jurisdiction of the court and application of rules regarding separation of powers and due process. This category does not include the rule prohibiting the judge from commenting on the weight of the evidence or conveying his opinion of the case. We do not believe that appellant's complaint falls within the rubric of absolute requirements and prohibitions.

■ The second category includes rights that are so fundamental to the proper functioning of our adjudicatory process that they cannot be forfeited by mere inaction. *Wright*, 873 S.W.2d at 82. For example, if a defendant wishes to relinquish his right to assistance of counsel or his right to a jury trial, he must do so expressly. *Id.* We do not believe that the right to a trial free of the judge's comment on the weight of the evidence attains such magnitude that it must be guaranteed unless expressly waived. There is no Texas authority in which a comment on the weight of the evidence has been recognized as fundamental error.

■ The third category is governed by the law of procedural default. *Wright*, 873 S.W.2d at 82. This category includes rules that are optional with each litigant, and most evidentiary and procedural rules in our system are of this type. *Id.* at 83. As a general rule, in order to preserve a complaint for review on appeal, a party must have made a timely objection to the trial court and obtained a ruling on the objection. Tex. R.App.P. 52(a).

In *Marin*, the court held that a defendant's right that his appointed counsel have 10 days to prepare for trial belongs in the second category, that is, it must be implemented unless expressly waived. *Id.* at 280. This holding is based on the reasoning that "the Legislature said so expressly by providing that appointed counsel 'may waive the [10 days of] preparation time with the consent of the defendant in writing or on the record in open court.'" *Id.* (citing Tex.Code Crim. P.Ann. art. 1.051(e) (Vernon 1995)). Therefore, a trial court's denial of the right to 10 days preparation time is preserved on appeal

for a fundamental error analysis even though there was no objection at trial. In contrast, the *Wright* court held that the right to have a trial court order preparation of a presentencing investigation report before the imposition of sentence falls in the third *Marin* category, in which a complaint is forfeited by nonaction. The failure of the defendant to object at trial waived his complaint. *Wright,* 873 S.W.2d at 83 (citing TEX.CODE CRIM.P.ANN. art. 42.12, § 9 (Vernon 1995)).

■■■■ We hold that the article 38.05 right to prohibit the judge from commenting on the weight of the evidence or conveying his opinion of the case falls within the third *Marin* category and is, therefore, forfeitable by inaction. We base this conclusion on the absence of a waiver clause in article 38.05. TEX.CODE CRIM.P.ANN. art. 38.05 (Vernon 1979). Errors of this type can be readily cured with a proper jury instruction. Having failed to object properly and timely at trial, appellant has forfeited his right.

### Conclusion

We overrule points of error one and two.

We affirm the judgment of the trial court.

OLIVER–PARROTT, C.J., concurs.

ANDELL, J., dissents.

OLIVER–PARROTT, Chief Justice, concurring.

I concur with the conclusion that, although it was error for the judge to comment on the weight of the evidence and convey his opinion of the case, appellant did not preserve his complaint for review. I hold that under the circumstances of this case, this did not constitute fundamental error.

However, I cannot agree with the assertion that all errors of this type can be readily cured with a proper jury instruction. While this may normally be true, there could be

those occasions when the nature of the judge's remarks would be so egregious as to be "incurable." Accordingly, I would not hold that the article 38.05 right of a defendant is necessarily forfeitable by inaction in all cases.

ANDELL, Justice, dissenting.

I dissent. The sole issue before this court is whether the trial judge's conduct, when he questioned the primary witness for the defense, amounted to fundamental error requiring reversal despite appellant's failure to object. I would hold that it did.

The testimony of Ms. Thompson directly contradicted that of the arresting officers in several crucial ways and, if believed by the jury, would have cast reasonable doubt on the State's case against appellant. Appellant argues that the trial judge took an adversarial position in his questioning of the defense witness and wrongfully influenced the jury towards disbelieving her testimony in favor of the testimony of the State's witnesses.[1] In addition, the prosecutor, in his closing argument, made use of the theory brought out by the court's examination of the witness, i.e., that the crack pipe Ms. Thompson saw the officer find may have been a different crack pipe also found on the scene, but unconnected to the case at trial.

Texas is "second to none" in its disapproval of the nonadversarial practice of trial judges' examination of witnesses and virtually alone in rejecting adoption of Federal Rule of Evidence 614 which authorizes trial judges to call and interrogate witnesses. *Morrison v. State,* 845 S.W.2d 882, 886 n. 10 (Tex.Crim. App.1992).

Both this Court and the Court of Criminal Appeals have consistently held that the failure to object to the trial court's comments precludes subsequent challenges on appeal. However, we have also acknowledged that an exception to the general rule exists in cases

---

1. This impression is supported by the fact that the trial court told the jury, during his final statements to them after the punishment phase of the trial, that *he* had believed the testimony of the police officers.

in which the trial court's comments and conduct amounted to fundamental error. "Where no objection is made, remarks and conduct of the court may not be subsequently challenged *unless they are fundamentally erroneous.*" *Brewer v. State*, 572 S.W.2d 719, 721 (Tex.Crim.App. [Panel Op.] 1978) (emphasis added). "The defendant's counsel failed to object to the trial court's comments. *In the absence of fundamental error,* the defendant has waived these points on appeal." *Cade v. State*, 795 S.W.2d 43, 45 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd) (emphasis added). Such is the case here.

Fundamental error is error that is so egregious and creates such harm that the defendant has not had a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1984). Although there is no clear-cut test for determining when comments and conduct of the trial court have reached the level of fundamental error, an examination of the case law dealing with this issue clearly shows that several factors have weighed heavily upon the courts when considering this issue.

One factor considered by the courts in each case is whether the remarks by the trial court were made in the presence of the jury. *See Silva v. State*, 635 S.W.2d 775, 778 (Tex. App.—Corpus Christi 1982, pet ref'd) ("whether appellant received a fair trial in light of the comments made by the court is a close question. But, we refuse to reverse *because the statements were not made in the presence of the jury* . . ."). *See also Bautista v. State*, 632 S.W.2d 846, 850 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd untimely filed); *Richardson v. State*, 632 S.W.2d 700, 702 (Tex.App.—Fort Worth 1982, no pet.).

Another issue the courts have considered is whether the trial court maintained an air of impartiality. It is permissible for the trial court to ask questions of a witness in order to clarify an issue or obtain a clearer idea of the merits of the case, so long as the judge maintains an impartial attitude when addressing such questions. *Brewer*, 572 S.W.2d at 721; *Velasquez v. State*, 815 S.W.2d 842, 846 (Tex.App.—Corpus Christi 1991, no pet.); *see also Varela v. State*, 561 S.W.2d 186, 192 (Tex.Crim.App.1978) (to constitute reversible error, comment of court must be reasonably calculated to prejudice defendant's rights).

The courts have also considered whether the trial judge's comments, however impartially they may have been rendered, may have led the jury to infer the judge's own opinion of the merits of the case. The jury is to be the sole judge of the credibility of the testimony of *all* of the witnesses and should be left to judge the weight and credibility of the testimony free from the influence of the trial judge. *Jones v. State*, 788 S.W.2d 834, 836 (Tex.App.—Dallas 1990, no pet.). Jurors are prone to seize with alacrity upon any conduct or language of the trial judge that they may interpret as shedding light upon the judge's view of the weight of the evidence, or the merits of the issues involved. *Bachus v. State*, 803 S.W.2d 402, 405 (Tex. App.—Dallas 1991, pet. ref'd) (citing *Jones*, 788 S.W.2d at 836). It defies logic and common sense to expect a jury to tell its "own judge" that the judge is wrong. *Bachus*, 803 S.W.2d at 405. Finally the courts must consider how the improper comments made by the trial court may have reverberated throughout the remainder of the trial. *Cade*, 795 S.W.2d at 45.

When viewing this case in light of each of the factors given weight by the courts in previous cases, I conclude that the trial court's questions to the witness here did, in fact, constitute fundamental error. Here, not only did the trial court question the witness in front of the jury, it also did so in a highly aggressive and sarcastic fashion that departed widely from the impartial demeanor required of the courts by this State.

The line of questions and the way in which they were asked clearly showed that the judge doubted the credibility of Ms. Thompson; the jury could hardly have avoided being influenced by this. Because no other evidence of drugs or drug use was found on

appellant or at the scene, it was critical to the State's case that the jury find that the crack pipe discovered at the scene was, in fact, dropped by appellant and retrieved by the officers who had seen him in possession of it.[2] Since the testimony of Ms. Thompson directly contradicted that of the police officers as to who discovered the crack pipe and when it was discovered,[3] the trial court, by questioning Ms. Thompson in such a way as to cause the jury to doubt her credibility, prevented appellant from receiving a fair and impartial trial.

Additionally, the State in its closing argument seized upon the judge's comments and used them to suggest anew that even if Ms. Thompson had seen another officer pick up a pipe, it may have been a second pipe discovered at the scene and not the one discovered by Officer Parker. Thus, not only did the trial court influence the jury by showing a bias against the primary defense witness, the court's line of questions was also used to bolster the State's case.

Given these facts, I would hold that fundamental error resulted from the comments and conduct of the trial court, and, as such, no objection was necessary at trial to preserve the issue for review on appeal.

Accordingly, I respectfully dissent.

---

**2.** The prosecutor admitted as much during his closing argument: "If there was one [crack pipe] there and the black officer came along and picked it up, I would have to come into court and said to y'all people that's the crack pipe that he had because it's in his front yard, but we don't have any evidence that he had it in his hand. You'd laugh at me and throw the case out in 30 seconds. It's a joke. He didn't do that. The officers tied the crack pipe that they saw in his hand that he dropped."

**3.** According to the testimony of the witnesses for both the State and appellant, Ms. Thompson came outside as appellant was still on the ground and in the process of being handcuffed. The critical difference in their testimony was that the arresting officer claimed that *he* retrieved the crack pipe immediately after placing appellant in the patrol car, while Ms. Thompson claimed that the crack pipe was discovered by another officer after an extensive search of the area.