In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00222-CR


______________________________




QUINCY LAJAMES NELSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 08F0535-202




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Quincy LaJames Nelson was convicted by a Bowie County jury of aggravated robbery with
a deadly weapon (1) and sentenced to forty years' imprisonment in the Texas Department of Criminal
Justice-Institutional Division. Nelson appeals, claiming the trial court erred in submitting certain
photographs to the jury and further claiming that he did not voluntarily waive his rights before
submitting to a custodial interrogation (a recording of which was shown to the jury). We affirm the
judgment.

I. BACKGROUND AND PROCEDURAL HISTORY

 On September 11, 2007, Nelson, armed with a pistol, entered Shelby's Exxon station with
a friend, (2) with robbery on their minds. The two entered the station through the garage bay doors and
proceeded to the office in the station's garage bay area. Having encountered no one at this point,
Nelson sat down at the desk and waited for a victim to appear. The long-time garage manager, Billy
Philyaw, entered the station through the front door and was told by another employee that there were
some people in the back that he thought might need an inspection sticker for an automobile. Philyaw
walked out to the office in the garage bay area, where he encountered Nelson, who was seated in a
chair in the office with his back to Philyaw. Philyaw asked Nelson if he needed an inspection. At
that point, Nelson pulled a black stocking mask over his face, grabbed Philyaw with one hand, and
pointed the gun at him. Nelson pushed Philyaw into a dark corner, demanded money, and threatened
to shoot Philyaw should Philyaw not comply with the demand. When Philyaw replied that he did
not have any money, Nelson hit him in the face with a blow that caused Philyaw to later require
surgery for repair of a blowout fracture. (3) After having struck Philyaw, Nelson and his friend fled the
scene, whereupon Philyaw contacted the police. Shortly thereafter, Nelson and his friend were
apprehended and taken to jail. 

 Kimberly Weaver, a detective with the Texarkana, Texas, Police Department, was assigned
the investigation of the Shelby Exxon robbery. Weaver, after advising Nelson of his rights pursuant
to Article 38.22, Section 2(a) of the Texas Code of Criminal Procedure, conducted a video recorded
custodial interrogation of him on the day of the robbery. Tex. Code Crim. Proc. Ann. art. 38.22,
§ 2(a) (Vernon 2005). 

 At trial, Nelson objected to the introduction of the video recording of the custodial
interrogation. He did not challenge the fact that Weaver had advised him of his rights but, rather,
maintained that he did not understand his rights and, therefore, could not have waived those rights. 
After having conducted a hearing outside the presence of the jury on the issue of the admissibility
of the recorded interview, the trial court dictated its findings of fact and conclusions of law into the
record, as follows: (1) Weaver advised Nelson of his rights and Nelson acknowledged that he
understood each of those rights; (2) thereafter, when Nelson was requested to sign a written waiver
of his rights, he hesitated, indicating that he might not understand each of his rights; (3) Weaver and
another officer who was present at the interrogation asked Nelson repeatedly what he failed to
comprehend, and repeated some of the waivers he was requested to make; (4) Nelson then appeared
to move his head in a consensual gesture and thereafter initialed each waiver of his rights that was
provided to him and signed the document, "Q. Nelson"; (5) Nelson understood his rights; and
(6) Nelson gave no indication at the time that he signed the waiver that he did not understand that
he was waiving the rights which had been explained to him. 

 During her investigation of the incident, Weaver took a photograph that depicted the injury
to Philyaw's eye and a photograph of Philyaw on the date of the robbery depicting Philyaw lying
down being oxygenated. These exhibits were admitted into evidence over Nelson's objection
pursuant to Rule 403 of the Texas Rules of Evidence. 

II. ISSUES PRESENTED

 On appeal, Nelson urges two points of error: (1) he maintains that the trial court committed
error by permitting the two photographs into evidence; and (2) he complains that the trial court erred
in its finding that Nelson understood his rights and that he knowingly, intelligently, and voluntarily
waived those rights when he consented to the interview in which he inculpated himself in the crime.

III. ANALYSIS OF POINTS OF ERROR

 A. The Photographs

 Nelson asserts that the trial court erred in admitting two, specific photographs into evidence
on the basis that the probative value of these photographs was substantially outweighed by the
danger of unfair prejudice. (4) The admissibility of a photograph is within the sound discretion of the
trial court. Paredes v. State, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004). So long as the trial
court's ruling on the admission of evidence lies within the zone of reasonable disagreement, its ruling
will not be reversed. Montgomery v. State, 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1990) (op.
on reh'g); see Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996) (plurality opinion). 

 Rule 403 of the Texas Rules of Evidence governs the admissibility of the allegedly
inflammatory photographs. Rule 403 provides that:

 Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence.


Tex. R. Evid. 403. Factors to be considered in determining whether the probative value of the
photographs is substantially outweighed by the danger of unfair prejudice to Nelson include:

 the number of exhibits offered, their gruesomeness, their detail, their size, whether
they are black and white or color, whether they are close-up . . . [and] the availability
of other means of proof and the circumstances unique to each individual case.


Long v. State, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991).

 Both photographs are color, 4" x 6" depictions of Philyaw's face. The first photograph
depicts a purple bruised area around Philyaw's right eye. The second photograph depicts Philyaw
resting with closed eyes with an oxygen tube having been placed in his nose. Both photographs are
taken from a close view point. While the photographs are certainly prejudicial to Nelson, they do
nothing more than depict Philyaw's condition after he was struck by Nelson; while graphic, they are
not gruesome in any respect. "'[U]nfair prejudice' refers to 'an undue tendency to suggest decision
on an improper basis, commonly, though not necessarily an emotional one.'" Erazo v. State, 144
S.W.3d 487, 501-02 (Tex. Crim. App. 2004) (quoting Rogers v. State, 991 S.W.2d 263, 266 (Tex.
Crim. App. 1999)). All testimony and evidence will be prejudicial to one party or the other. See
Joiner v. State, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992). It is only when there is a clear
disparity between the degree of prejudice of the offered evidence and its probative value that Rule
403 is applicable. Jones v. State, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996). We find no such
disparity here.

 Moreover, a photograph is generally admissible if verbal testimony about the matters
depicted in the photograph is also admissible. Paredes, 129 S.W.3d at 539. Here, there was
testimony that when Philyaw indicated he did not have any money, Nelson struck him in the face. (5) 
We conclude that the photographs at issue presented no danger of unfair prejudice that substantially
outweighed their probative value. The trial court did not abuse its discretion in admitting the
photographs.

 B. The Custodial Interrogation

 Nelson was advised of his rights pursuant to Article 38.22, Section 2(a) of the Texas Code
of Criminal Procedure, but contends that because he failed to fully comprehend or understand those
rights, they could not have been waived. Therefore, he maintains that the trial court erred in
permitting evidence of the interrogation to be introduced. 

 The trial court conducted a hearing outside the presence of the jury on the motion to suppress
evidence of the videotaped interrogation of Nelson. The hearing included the voir dire of Weaver
as well as a viewing of the disputed video recording by the trial court. The court then dictated its
findings of fact and conclusions of law into the record (summarized above), as required by Article
38.22, Section 6 of the Texas Code of Criminal Procedure. 

 At a hearing on the voluntariness of a confession, the trial court is the sole and exclusive trier
of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony. 
Green v. State, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996); Gentry v. State, 770 S.W.2d 780, 790
(Tex. Crim. App. 1988). As such, an appellate court is not at liberty to disturb any finding which
is supported by the record. Green, 934 S.W.2d at 98. Mixed questions of law and fact are also
reviewed for an abuse of discretion, if those questions turn on an evaluation of witness credibility
and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo
mixed questions of law and fact not falling within this category. Id.

 Here, there is no indication in the record that the trial court, in its discretion as finder of fact,
disbelieved Weaver's testimony regarding the interrogation and whether Nelson understood the rights
he was waiving. In fact, Weaver's testimony concerning the waiver of these rights was not disputed. 
Further, there is no question raised as to the accuracy or reliability of the video recording depicting
Weaver's interrogation. Because the facts surrounding the interrogation are not in dispute, the matter
at issue is a question of law, i.e., whether Nelson's statement is admissible under Article 38.22,
Section 3(a)(2). (6) We, therefore, apply a de novo review.

 Article 38.21 of the Texas Code of Criminal Procedure provides that the statement of a
person accused of a crime "may be used in evidence against him if it appears that the same was freely
and voluntarily made without compulsion or persuasion, under the rules hereafter provided." Tex.
Code Crim. Proc. Ann. art. 38.21 (Vernon 2005). It is well established that the voluntariness of
such statements is to be evaluated under the "totality of the circumstances" standard. See Delao v.
State, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007) (recognizing totality of circumstances to be
correct standard by which to evaluate voluntariness of confession given by an adult); Creager v.
State, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997) ("[v]oluntariness is decided by considering the
totality of the circumstances under which the statement was obtained").

 The video recording of Nelson's interrogation began at 6:05 p.m. Prior to any interrogation,
Weaver read Nelson the rights required by Article 38.22. After first indicating he might not
understand the rights read to him, questions were asked by the officers with respect to what Nelson
did not understand, and certain of the rights were read again and explained to Nelson. Nelson then
appeared to indicate an understanding of those rights by nodding his head in the affirmative, and then
proceeded to place his initials next to waivers of each of the five enumerated rights set forth in
Article 38.22. Nelson also placed his initials next to the statement that: "You knowingly,
intelligently, and voluntarily waive any rights set out in this warning." Nelson then signed the
"Warning of Rights" as witnessed by Weaver. Nelson does not claim that he was coerced,
intimidated, tricked, or in any way forced into giving his statement. (7) In fact, Weaver made it very
clear that Nelson could remain silent and that he could terminate the interview. Nelson simply
claims that because he did not understand his rights, the trial court erred in showing the video
recording to the jury and in permitting reference to the recording and to any statements Nelson made
while being recorded. We disagree. 

 Here, Nelson placed his initials "QN" next to each, separately numbered and enumerated
right he was given. Nelson's signed "Warning of Rights" indicates that he "knowingly, intelligently,
and voluntarily" waived those rights. No one alleged that Nelson is unable to read and understand
the English language; contrarily, the record contains a video recording of Nelson reading and signing
the "Warning of Rights." Nelson neither claims--nor is there evidence in the record--of any
diminished capacity on his part. Further, there is no showing of lengthy interrogation or
incommunicado incarceration which would mitigate against a finding of waiver. All of these factors
are properly considered in viewing the totality of the circumstances. Walker v. State, 501 S.W.2d
912 (Tex. Crim. App. 1973); Richardson v. State, 632 S.W.2d 700, 703-04 (Tex. App.--Fort Worth
1982, no pet.).

 We conclude that when one considers the totality of the circumstances, a momentary question
of whether Nelson fully understood was adequately addressed at the time it was posed. Therefore,
we determine that Nelson did "knowingly, intelligently, and voluntarily" waive his rights under
Article 38.22 of the Texas Code of Criminal Procedure. The State discharged its burden as to an
affirmative waiver of the privilege against self-incrimination, and the court did not err in admitting
the video recording of Nelson's statement. 

IV. CONCLUSION

 Because we conclude the trial court did not err in admitting certain photographs into evidence
depicting Philyaw's injuries, and further did not err in admitting Nelson's video recorded statement
into evidence, we affirm the judgment of the trial court. 





 Bailey C. Moseley

 Justice


Date Submitted: October 14, 2009

Date Decided: November 10, 2009


Do Not Publish

1. Tex. Penal Code Ann. § 29.03 (Vernon 2003).
2. The friend was previously tried and convicted for her role in the aggravated robbery. 
3. Referring to an orbital floor fracture. See http://emedicine.medscape.com/.
4. Tex. R. Evid. 403.
5. This testimony was not met with any objection and was relevant (even though assault with
bodily injury was not an element of this offense) because it imparted to the jury information essential
to understanding the context and circumstances of events which legally are blended and interwoven. 
Camacho v. State, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993).
6. Article 38.22, Section 3(a)(2) of the Texas Code of Criminal Procedure requires that any oral
statement resulting from custodial interrogation must contain a warning informing the accused of
his rights under Article 38.22, Section 2, and the accused must knowingly, intelligently, and
voluntarily waive those rights. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(2) (Vernon 2005). 
Article 38.22, Section 2 of the Texas Code of Criminal Procedure provides that notice of the
following rights must be provided to the accused prior to making a statement:


 (1) he has the right to remain silent and not make any statement at all and
that any statement he makes may be used against him at his trial;

 

 (2) any statement he makes may be used as evidence against him in court;

 

 (3) he has the right to have a lawyer present to advise him prior to and
during any questioning;

 


 (4) if he is unable to employ a lawyer, he has the right to have a lawyer
appointed to advise him prior to and during any questioning; and 

 

 (5) he has the right to terminate the interview at any time. 


Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (Vernon 2005).
7. Although Nelson did not confess to the robbery, he changed his account of events more than
once. This was used against Nelson when Weaver testified that it is common for individuals
suspected of crimes to change their story.